**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MELVIN ROACH, JR.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-6403** |
| | : | |
| **CAPITAL ONE** | : | |
| **FINANCIAL CORP.**, *et al.*, | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**KENNEY, J.**                                                      **DECEMBER  23, 2024**

Plaintiff Melvin Roach, Jr., brings this *pro se* civil action against Capital One Financial

Corp. and Firstsource Advantage, LLC.  He seeks leave to proceed *in forma pauperis*.  For the

following reasons, the Court will grant Roach *in forma pauperis* status and dismiss the

Complaint.

**I.      FACTUAL ALLEGATIONS**[1]

Roach claims that he was the holder of a credit card issued by Capital One and that

Firstsource is a debt collection agency engaged in collecting debts on behalf of creditors,

including Capital One.  (ECF No. 2 at 2, 3.)  He alleges that "Defendants engaged in unlawful

actions, including imposing unauthorized fees, transferring [his] personal information without

consent, failing to acknowledge a Notice of Entitlement Order, and [engaging in] adverse credit

reporting based on deceptive terms."  (*Id.* at 1-2.)  Roach asserts that he has a mailing address in

Bala Cynwyd, Pennsylvania, and a "physical place of business in Philadelphia."  (*Id.* at 2.)

---

[1] Roach initiated this matter by filing a Complaint (ECF No. 2) and a Memorandum of Law in Support of Plaintiff's Claims (ECF No. 2-1).  He later submitted Exhibits (ECF No. 4). The Court will consider these documents together as comprising the Complaint.  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

According to Roach, Capital One "improperly assessed fees, penalties, and interest without proper authorization or justification, in violation of the agreement governing the account." (*Id.* at 3.) He also contends that Capital One transferred his account information to Firstsource without his consent, "constituting an unauthorized transfer of personal and proprietary information." (*Id.*) Roach claims that Firstsource subsequently attempted to collect "an alleged debt based on the unauthorized transfer" of his information and employed "unlawful practices in violation of the [Fair Debt Collection Practices Act ("FDCPA")] and [Fair Credit Reporting Act ("FCRA")]." (*Id.* at 4.)

Roach sent a "Notice of Entitlement Order and Dispute of Credit Card Handling" to Capital One on October 21, 2024, "demanding full disclosure of unauthorized transactions, fees, and transfers, as well as compliance with Pennsylvania's codified UCC statutes under 13 Pa.C.S. § 8102, § 8501 et seq., and § 9-210," and that Capital One failed to acknowledge or respond to this notice. (*Id.*) He asserts that "Defendants' actions resulted in adverse credit reporting" that defamed his character and damaged his reputation and financial opportunities. (*Id.*)

In Count I of the Complaint, Roach alleges that "as an entitlement holder" he has "proprietary rights to the financial assets associated with his account and related transactions." (*Id.* at 4-5.) He claims that "Defendants' unauthorized transfer of [his] account information and failure to respond to the Notice of Entitlement Order constitute an infringement of his possessory rights in violation of 13 Pa.C.S. § 8102, § 8501 et seq., and § 9-210." (*Id.* at 5.) Roach further contends that he is a "financial asset holder" under 13 Pa. C.S. § 8102 and Capital One's "unauthorized transfer" of his financial information to Firstsource constitutes an infringement of his "possessory rights." (ECF No. 2-1 at 2.) According to Roach, Firstsource "compounded this harm by attempting to collect a debt based on this unauthorized transfer" in violation of the

FDCPA and FCRA.  (*Id.*)  He claims the transfer resulted in unauthorized third-party contact regarding his account.  (*Id.* at 3.)  Additionally, Roach claims that the Notice of Entitlement Order included "a demand for a full accounting pursuant to 13 Pa. C.S. § 9-210" and Defendant's failure to respond denied him his right to access a detailed record of financial transactions.  (*Id.*)

In Count II of the Complaint, Roach asserts that he entered into a valid agreement with Capital One for the use and maintenance of a credit card.  (ECF No. 2 at 5.)  He alleges that Capital One breached this agreement by imposing unauthorized fees, penalties, and interest, and by transferring his account information to a third party without consent.  (*Id.*)  He also claims that "Defendants'" failure to respond to the Notice of Entitlement Order further constitutes a breach.  (*Id.* at 6; ECF No. 2-1 at 3-5.)

In Count III of the Complaint, Roach claims that "Defendants' securitization and pooling" of his "financial instruments without proper disclosure violate the Securities Act of 1933."  (ECF No. 2 at 6.)  He states that "Capital One's securitization and pooling of [his] credit account without proper disclosure violates the transparency requirements under the Securities Act of 1933.  Securitization involves bundling of financial assets, such as credit accounts, into securities that are sold to investors.  This process requires full disclosure to the affected account holders to ensure transparency and compliance with federal securities laws."  (ECF No. 2-1 at 5-6.)  Roach contends that his account was included in securitization pools starting in 2022 and "Defendant" failed to notify him of these actions or disclose material information required under federal securities laws.  (*Id.* at 6.)

Roach also alleges that Firstsource's attempt to collect a debt "based on unauthorized information transfer and deceptive practices constitutes a violation of the FDCPA and FCRA."

(ECF No. 2 at 6 (Count IV).)  He further claims that "Defendants' adverse credit reporting based on deceptive terms defamed [his] character, causing reputational harm and financial damages." (*Id.* at 7 (Count V).)  Additionally, Roach claims that "Defendants retained financial benefits through unauthorized fees, penalties, and adverse credit reporting, resulting in inequitable enrichment at [his] expense." (*Id.* (Count VI); *see also* ECF No. 2-1 at 6-7.)  Based on these allegations, Roach seeks monetary damages and injunctive relief.  (*Id.* at 7-8.)

## II.    STANDARD OF REVIEW

The Court will grant Roach leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Roach is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

Roach alleges that he is a Capital One credit card holder, that Capital One assessed improper fees, and that Capital One transferred his financial information to Firstsource, a debt collector. Based on these facts, he attempts to allege that Defendants violated his rights under various statutes and common law principles. However, Roach's Complaint, even when liberally construed, is wholly conclusory and vague, and consequently fails to allege a plausible claim.

### A.    FCRA, Contract, and Defamation Claims

Roach contends that Defendants' actions resulted in adverse credit reporting in violation of the FCRA. (*See, e.g.,* ECF No. 2 at 4.) However, he fails to allege a plausible basis for a claim under this statute. The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (noting that the FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that

5

utilize accurate, relevant and current information in a confidential and responsible manner"

(quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010))).  In the language of the

FCRA, consumer reporting agencies "collect consumer credit data from 'furnishers,' such as

banks and other lenders, and organize that material into individualized credit reports, which are

used by commercial entities to assess[, *inter alia*,] a particular consumer's creditworthiness."

*Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014).

Consumer reporting agencies are required to "follow reasonable procedures to assure

maximum possible accuracy of the information concerning the individual about whom the report

relates." 15 U.S.C. § 1681e(b).[2]  The FCRA also "confers on a consumer a right to have the

negative information on his or her credit report investigated for accuracy."  *Klotz v. Trans Union,*

*LLC*, 246 F.R.D. 208, 211 (E.D. Pa. 2007).  In that regard, if a consumer disputes the

completeness or accuracy of information contained in her file, the credit reporting agency must

"conduct a reasonable reinvestigation to determine whether the disputed information is

inaccurate." 15 U.S.C. § 1681i(a)(1)(A).[3]

---

[2] To state a claim under this section of the FCRA, a plaintiff must plead the following elements: (1) inaccurate information was included in a credit report; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered an injury; and (4) that injury was caused by the inclusion of the inaccurate entry.  *Cortez*, 617 F.3d at 708 (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996)).

[3] To establish that a consumer reporting agency is liable for failing to reinvestigate a dispute under the FCRA, the consumer must establish that the consumer reporting agency had a duty to do so, and that it would have discovered a discrepancy had it undertaken a reasonable investigation.  *Cortez*, 617 F.3d at 713 (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)).  A consumer reporting agency "may terminate a reinvestigation of information disputed by a consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A).

To proceed against a credit reporting agency under either § 1681e(b) or § 1681i(a), a

plaintiff must allege that the reported information was in fact inaccurate. *Bibbs v. Trans Union*

*LLC*, 43 F.4th 331, 342-43 (3d Cir. 2022); *see also Angino v. Trans Union LLC*, 784 F. App'x

67, 69 (3d Cir. 2019) ("To prevail under [a § 1681e(b) claim or a § 1681i(a) claim], the . . .

[plaintiffs] must show that their credit report contains inaccurate information."). A court "does

not need to reach or consider the reasonableness of a credit reporting agency's procedures under

15 U.S.C. § 1681e or the reasonableness of a credit reporting agency's reinvestigation under §

1681i unless the information contained in the report is inaccurate." *Holland v. Trans Union*

*LLC*, 574 F. Supp. 3d 292, 297-98 (E.D. Pa. 2021).[4]

To state a plausible claim under the FCRA against a furnisher of credit information, a

plaintiff must allege that he "filed a notice of dispute with a consumer reporting agency; the

consumer reporting agency notified the furnisher of information of the dispute; and the furnisher

of information failed to investigate and modify the inaccurate information." *Harris v. Pa.*

*Higher Educ. Assistance Agency/Am. Educ. Servs.*, No. 16-693, 2016 WL 3473347, at *6 (E.D.

Pa. June 24, 2016), *aff'd sub nom. Harris v. Pennsylvania Higher Educ. Assistance Agency/Am.*

*Educ. Servs.*, 696 F. App'x 87 (3d Cir. 2017) (*per curiam*); *see also* 15 U.S.C. § 1681s-2(b). If

the furnisher fails to comply with its obligations under the Act, "the aggrieved consumer can sue

---

[4] A consumer report is inaccurate "when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) (*per curiam*) (cleaned up); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 120 (E.D.N.Y. 2020), *aff'd*, 994 F.3d 88 (2d Cir. 2021). "[I]nformation that is technically accurate but materially misleading is sufficient to trigger § 1681i(a), just as it is for § 1681e(b)." *Bibbs*, 43 F.4th at 345 (citing *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018)). A court must apply a reasonable reader standard to determine the accuracy of an entry in a report, and consider whether the entry, read in the context of the report in its entirety, is inaccurate or ambiguous. *Id.* at 342.

for noncompliance." *Hoffmann v. Wells Fargo Bank, N.A.*, 242 F. Supp. 3d 372, 391 (E.D. Pa.

2017).  "[U]nder the FCRA, '15 U.S.C. § 1681s-2(b) is the only section that can be enforced by a

private citizen seeking to recover damages caused by a furnisher of information.'" *Eades v.*

*Wetzel*, 841 F. App'x 489, 490 (3d Cir. 2021) (*per curiam*) (quoting *SimmsParris*, 652 F.3d at

358) (alteration omitted)).  Similar to claims under § 1681e or § 1681i, courts have explicitly

held that a showing of inaccuracy is essential to a § 1681s-2(b) claim in regard to furnishers of

credit information.  *Holland*, 574 F. Supp. 3d at 298 (citations and internal quotation marks

omitted).

Roach does not allege that either Defendant is a credit reporting agency and the Court can

discern no basis for an FCRA claim against Firstsource.  To the extent Roach seeks to allege an

FCRA claim against Capital One under 15 U.S.C. § 1681s-2(b) as a furnisher, he has not alleged

facts in support of such a claim.  Roach has not pled facts demonstrating that he filed a notice of

dispute with a consumer reporting agency, the consumer reporting agency notified the furnisher

of the dispute, and the furnisher failed to investigate and modify the inaccurate information.

Instead, he merely alleges that "Defendants'" actions resulted in adverse credit reporting.  (*See,*

*e.g.,* ECF No. 2 at 4.)  Thus, Roach simply has not alleged a plausible FCRA claim.[5]

---

[5] Additionally, Roach must have standing to bring an FCRA claim and plead facts in
support thereof in the Complaint.  Article III of the Constitution limits the power of the federal
judiciary to the resolution of cases and controversies, and this "requirement is satisfied only
where a plaintiff has standing."  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269,
273 (2008).  To have standing to bring a claim in federal court, a plaintiff must show, inter alia,
that he has "suffered an injury in fact—an invasion of a legally protected interest which is (a)
concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*
*v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "For an injury to be 'particularized,' it 'must
affect the plaintiff in a personal and individual way."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339
(2016) (quoting *Lujan*, 504 U.S. at 560 n.1.).
    In *TransUnion LLC v. Ramierz*, 594 U.S. 413, 425 (2021), the Supreme Court focused on
the "concreteness" prong of the standing analysis.  The Court expressly rejected the notion that
"a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a

Roach also seeks to present breach of contract and defamation claims against Capital One. (*See* ECF No. 2 at 5-7.) He alleges that he entered into an agreement with Capital One for the use and maintenance of a credit card and that Capital One breached the agreement "by imposing unauthorized fees, penalties, and interest by transferring Plaintiff's account information to a third party without consent." (*Id.* at 5.) He further claims that Capital One failed to respond to his Notice of Entitlement Order, which constituted a breach of contract. (*Id.* at 6.) Moreover, Roach alleges that "Defendants' adverse credit reporting based on deceptive terms defamed Plaintiff's character, causing reputational harm and financial damages." (*Id.* at 7.) Such allegations are too ambiguous and conclusory to determine whether Roach has a basis for a claim. In any event, to the extent they are based on the furnishing of information to a consumer reporting agency, such claims would be preempted by federal law.

"[T]he FCRA broadly preempts any state law requirement[s] or prohibition[s] . . . with respect to any subject matter regulated under Section 1681s-2 of this title, relating to the responsibilities of any persons who furnish information to consumer reporting agencies." *Rivas v. L&N Builders Grp., Inc.*, No. 22-7544, 2023 WL 4014290, at *3 (D.N.J. June 15, 2023) (citing 15 U.S.C. § 1681t(b)(1)(F)); *see also Cheadle v. Experian*, No. 20-18183, 2021 WL 3144843, at

---

person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 426 (quoting *Spokeo*, 578 U.S. at 341). Instead, a plaintiff must allege a concrete injury separate and apart from an injury under the law. *Id.* (explaining that "an injury in law is not an injury in fact"). The Court differentiated between tangible and intangible injuries. Where a defendant has caused a tangible harm—*i.e.*, a physical or monetary harm—the plaintiff will have suffered a concrete injury in fact. *Id.* at 424-25. Intangible harms may also be concrete, so long as those injuries bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425.

It is not clear from his Complaint that Roach has standing to bring an FCRA claim. The party who invokes federal jurisdiction bears the burden of establishing standing. *Spokeo*, 578 U.S. at 339. To satisfy the standing requirement, Roach must sufficiently tie alleged injuries to the conduct of Capital One, because a bare procedural violation, even if he alleges one, does not provide the relief Roach seeks.

*4 (D.N.J. July 26, 2021) ("Although not yet directly addressed by the Third Circuit, several other circuit courts have held that § 1681t(b)(1)(F) preempts all state and common law claims against furnishers of information with respect to all subject matter regulated under § 1681s-2.") (citing cases).  Courts, including those in this district, "have interpreted . . . [§ 1681t(b)(1)(F)] to bar all state claims, whether statutory or common-law based."  *Rivas*, 2023 WL 4014290 at *3 (citations omitted); *see also Havassy v. Mercedes-Benz Fin. Servs. USA, LLC*, 432 F. Supp. 3d 543, 547 (E.D. Pa. 2020) ("Multiple district courts within the Third Circuit have likewise adopted this conclusion and found that Section 1681t(b)(1)(F) preempts both state statutory and common law claims against furnishers of information acting under Section 1681s-2.") (citing cases); *LeBoon v. DS Waters of Am., Inc.*, No. 20-5268, 2021 WL 1193239, at *3 (E.D. Pa. Mar. 30, 2021) (finding that breach of contract and intentional infliction of emotional distress claims were premised on allegations of conduct regulated under § 1681s-2 and therefore preempted by § 1681t(b)(1)(F)); *Cicala v. Trans Union, LLC*, Nos. 15-6790, 15-6801, 2016 WL 2622377, at *4 (E.D. Pa. May 9, 2016) (finding state law defamation claim preempted); *Vullings v. Trans Union, LLC*, 115 F. Supp. 3d 538, 543 (E.D. Pa. 2015) (finding state law defamation claim preempted); *Grossman v. Trans Union, LLC*, 992 F. Supp. 2d 495, 500 (E.D. Pa. 2014) (finding state law defamation and negligence claims preempted).  Accordingly, any state law breach of contract and defamation claims against Capital One, based on its responsibilities as a furnisher of information under § 1681s-2, will be dismissed.

### B.    FDCPA

Congress enacted the FDCPA "'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses.'" *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019) (quoting

15 U.S.C. § 1692(e)). "The FDCPA pursues these stated purposes by imposing affirmative

requirements on debt collectors and prohibiting a range of debt-collection practices." *Id.* (citing

15 U.S.C. §§ 1692b-1692j); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir.

2020) (*en banc*) ("The FDCPA protects against abusive debt collection practices by imposing

restrictions and obligations on third-party debt collectors."). To state a claim under the FDCPA,

a plaintiff must establish that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the

defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it,

and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."

*Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (internal citations

omitted). Where a plaintiff fails to allege facts supporting each of these elements, the FDCPA

claim is not plausible. *See Humphreys v. McCabe Weisberg & Conway, P.C.*, 686 F. App'x 95,

97 (3d Cir. 2017) (*per curiam*) (concluding that FDCPA claim was pled based on "conclusory

and speculative statements that cannot survive a motion to dismiss").

To the extent he seeks to present an FDCPA claim, Roach has failed to allege facts in

support of a plausible claim. He alleges that "Firstsource's attempt to collect a debt based on

unauthorized information transfer and deceptive practices constitutes a violation of the FDCPA

and FCRA." (ECF No. 2 at 6.) This allegation is wholly conclusory and does not meet the *Iqbal*

pleading standard. Moreover, Roach would need to establish standing to bring an FDCPA claim

and he has not done so.

Further, as noted above, a plaintiff bringing an FDCPA claim must allege that he is a

consumer. The FDCPA defines a consumer to be "any natural person obligated or allegedly

obligated to pay any debt." 15 U.S.C. § 1692a(3). The term "debt" means any obligation or

alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.  15 U.S.C. § 1692a.  Thus, the FDCPA applies to consumer debts, not commercial debts.  *Conboy v. United States Small Bus. Admin.*, 992 F.3d 153, 157 (3d Cir. 2021).  In the Complaint, Roach lists his "physical place of business" as Philadelphia and it appears that the credit card at issue is a Capital One Spark Classic card, a business credit card.  (*See* ECF No. 2 at 2, ECF No. 4-1.)  If Roach elects to file an amended complaint raising claims under the FDCPA, he must clearly allege facts showing that he is a consumer and that the "debt" at issue is primarily for personal, family, or household purposes.

### C.    Other Claims

There are other problems with Roach's claims.  He alleges a violation of the Pennsylvania Uniform Commercial Code, specifically, 13 Pa. C.S. § 8102, § 8501, and § 9210. (ECF No. 2 at 4-5, ECF No. 2-1 at 2-3.)  The Court can discern no basis for a violation of the Pennsylvania UCC sections referenced by Roach based on his allegations, as Roach has not plausibly alleged that his credit card account is a "security" governed by Articles 8 and 9 of Pennsylvania's UCC and that his interactions with either Defendant constitute a secured transaction.  *See First Nat. Bank of Palmerton v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 98-3049, 1999 WL 163606, at *3 (E.D. Pa. Mar. 19, 1999) ("Sections eight and nine of the Uniform Commercial Code ("UCC"), as codified in the Pennsylvania statutes, set forth the rights and duties of parties participating in secured transactions involving marketable securities."). Roach also makes the bald assertion that Capital One securitized and pooled his credit card account without making the proper disclosures under the Securities Act of 1933.  (*See, e.g.,* ECF No. 2 at , ECF No. 2-1 at 5-6.)  The Court can discern no basis for a claim based on the facts

alleged under the Securities Act of 1933 either, as Roach has not plausibly alleged that, as the holder of a credit card, he is an "investor" and his credit card account is a "security" governed by the Securities Act of 1933. *See Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 150 (3d Cir. 1997) ("In order to invoke the protections of the federal securities laws, an investor must show, as a threshold matter, that the instrument in question is a security.  Section 2(1) of the Act sets forth the definition of the term "security.") (citing 15 U.S.C. § 77b(a)(1)).  Thus, Roach's reliance upon those statutory provisions as providing the relief he seeks is misplaced.

Furthermore, Roach has no basis for an unjust enrichment claim.  As alleged, Roach's claims are based on the credit card account he maintained with Capital One, which is governed by a contract between the parties.  "An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." *Sevast v. Kakouras*, 915 A.2d 1147, 1153 n.7 (Pa. 2007).  The doctrine of unjust enrichment is "inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Benefit Trust Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (1969)).  Thus, dismissal of an unjust enrichment claim is proper where "the relationship between the parties is founded on a written instrument." *Harold ex rel. Harold v. McGann*, 406 F. Supp. 2d 562, 579 (E.D. Pa. 2005).

IV.    **CONCLUSION**

For the foregoing reasons, the Court will dismiss Roach's Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Roach will be given leave

to file an amended complaint if he has a good faith basis for doing so and can cure the

deficiencies noted by the Court.  An Order follows.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, J.**